## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## JASPER DIVISION

| | |
|---|---|
| **GARY WATKINS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.:  6:16-CV-1095-VEH** |
| | ) |
| **NANCY A. BERRYHILL, ACTING** | ) |
| **COMMISSIONER, SOCIAL** | ) |
| **SECURITY ADMINISTRATION,** | ) |
| | ) |
| **Defendant**. | ) |

---

## <u>MEMORANDUM OPINION</u>

Plaintiff Gary Watkins ("Mr. Watkins") brings this action under 42 U.S.C.
§ 405(g), Section 205(g) of the Social Security Act. He seeks review of a final
adverse decision of the Commissioner of the Social Security Administration
("Commissioner"),[1] who denied his application for supplemental security income

---

[1] Nancy A. Berryhill was named the Acting Commissioner on January 23, 2017. *See*
https://www.ssa.gov/agency/commissioner.html. Under 42 U.S.C. § 405(g), "[a]ny action
instituted in accordance with this subsection shall survive notwithstanding any change in the
person occupying the office of Commissioner of Social Security or any vacancy in such office."
Accordingly, pursuant to 42 U.S.C. § 405(g) and Rule 25(d) of the Federal Rules of Civil
Procedure, the court has substituted Nancy A. Berryhill for Carolyn W. Colvin in the case
caption above and **HEREBY DIRECTS** the clerk to do the same party substitution on CM/ECF.

("SSI") and disability insurance benefits ("DIB").[2,3] Mr. Watkins filed an application for DIB on November 26, 2012, and SSI on February 27, 2013. Thereafter, Mr. Watkins pursued and exhausted the administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review pursuant to the provisions of section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g).[4]

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Id*. Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* The court has carefully reviewed the entire record in this case and is of the opinion that the Commissioner's decision is not

_____

[2] "DIB" is also referred to as "SSDI" in Plaintiff's brief.

[3] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

[4] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

supported by substantial evidence and that proper legal standards were not applied in reaching that decision. Accordingly, the decision of the Commissioner must be **REVERSED** and **REMANDED**.

## FACTUAL AND PROCEDURAL HISTORY

Mr. Watkins filed a Title II application for DIB on November 26, 2012. (Tr. 29). He filed a Title XVI application for SSI on February 27, 2013. *Id.* In both applications, Mr. Watkins alleged disability beginning October 15, 2011 (Tr. 29), which was subsequently amended to February 12, 2013. (Tr. 167). The applications were denied administratively on May 16, 2013, and Mr. Watkins timely requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 29). That hearing was held on September 12, 2014, and the ALJ denied both claims. *Id*. Mr. Watkins filed a complaint on July 5, 2016, which asks this court to review the ALJ's decision. (Doc. 1).

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine

if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239. This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. Substantial evidence is "more than a scintilla, but less than a preponderance." *Id*. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo*, because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. *Cornelius v. Sullivan*, 936 F. 2d 1143, 1145-46 (11th Cir. 1991).

## <u>STATUTORY AND REGULATORY FRAMEWORK</u>

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[5] The Regulations define "disabled" as

---

[5] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 13, 2017.

"the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" that "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;

(2) whether the claimant has a severe impairment;

(3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];

(4) whether the claimant can perform his or her past work; and

(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-

63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The sequential analysis goes as follows:

> Once a claimant has satisfied steps One and Two, [he] will automatically be found disabled if [he] suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform [his] work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).

The Commissioner must further show that such work exists in the national economy.

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

After consideration of the entire record, the ALJ made the following findings:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2014. (Tr. 12).

2.  The claimant has not engaged in substantial gainful activity since February 12, 2013, the amended alleged onset date. (20 C.F.R. § 404.1517 *et seq.*, and 416.971 *et seq.*). (Tr. 12).

3.  The claimant has the following severe impairment: depression, and history of substance abuse. (20 C.F.R. § 404.152(c) and § 416.920(c)).[6] (Tr. 12).

---

[6] Mr. Watkins claims that the ALJ committed reversible error in not listing his degenerative disc disease as a severe impairment. (Tr. 12). The court concludes that this mistake constitutes harmless error. *See Diorio v. Heckler*, 721 F. 2d 726, 728 (11th Cir. 1983) (holding that the complained-of error was harmless because it did not impact the step being challenged)). More specifically, the undersigned has recently held that:

> Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe. Instead, at step three, the ALJ is required to demonstrate that it has considered all of the claimant's impairments, whether

4.	The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (20 C.F.R. § 404.1525, § 404.1526, § 416.920(d), § 416.925 and § 416.926). (Tr.13).

5.	After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work[7] as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b). For safety reasons and a history of drug abuse, the claimant should not work on ladders, ropes or scaffolds, or unprotected heights or dangerous machinery. The claimant can understand and remember simple instructions and carry out simple instructions. He can sustain attention to routine/ familiar tasks for eight-hour workdays at two-hour increments with all customary breaks. He can tolerate ordinary work pressures, but should avoid quick decision-making, rapid changes and multiple demands. He will benefit from regular rest breaks and slower pace, but will be able to maintain a work pace consistent with the mental demands of competitive level of work. Contact with the public should be casual or occasional. Contact with supervisors and coworkers should be occasional. He can adapt to infrequent and well-explained changes. (Tr.15).

---

severe or not, in combination.

*Tucker v. Colvin*, No. 2:15-CV-00629-VEH, 2016 WL 3519391, at *6 (N.D. Ala. June 28, 2016) Additionally, later within his decision, the ALJ identifies Mr. Watkins's degenerative disc disease as a severe impairment and proceeds with analyzing it under the disability framework. (Tr. 13).

[7] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. § 404.1567.

6.     The claimant was 50 years old, age category to closely approaching advanced age (20 C.F.R. § 404.1563 and § 416.963). (Tr. 20).

7.     The claimant has a limited education and is able to communicate in English (20 C.F.R. § 404.1564 and § 416.964). (Tr. 20).

8.     Transferability of job skills is not material to the determination of disability because using Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. (*See* 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2). (Tr. 20).

9.     Considering the claimant's age, education, work experience, and residual functioning capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (20 C.F.R. § 404.1569, § 404.1569(a), § 416.969, and § 416.969(a)). (Tr. 20).

10.    The claimant has not been under a disability, as defined in the Social Security Act, from February 12, 2013, through the date of this decision. (20 C.F.R. § 404.1520(g) and § 416.920(g)). (Tr. 21).

## ANALYSIS

## I.    Introduction

The court may only reverse a finding of the Commissioner if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th

Cir. 1980)).[8] However, the court "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id*. (citing *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977)).

Mr. Watkins urges this court to reverse the Commissioner's decision to deny his DIB and SSI. (Doc. 9 at 1). He asserts that the ALJ failed to properly credit his pain testimony pursuant to the Eleventh Circuit pain standard. *Id*. at 4. More specifically, he contends that the ALJ improperly discounted his claims of disabling physical limitations. *Id*. Mr. Watkins also maintains that the ALJ failed to fully and fairly develop the record.[9] *Id*. Upon review, this court finds that the ALJ did not correctly apply the pain standard and that the ALJ's decision was not supported by substantial evidence. For the reasons set forth below, the court has **REVERSED** and **REMANDED** the ALJ's decision.

## II. The ALJ Failed To Properly Evaluate The Credibility Of Mr. Watkins's Complaints Of Pain Consistent With The Eleventh Circuit Pain Standard.

The Eleventh Circuit pain standard applies when a claimant attempts to "establish disability through his or her testimony of pain or other subjective

---

[8] *Strickland* is binding precedent on this Circuit. *See Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all decision of the former Fifth Circuit handed down prior to October 1, 1981).

[9] Because the court finds that the ALJ misapplied the pain standard, it does not reach the issue of whether he failed to fully develop the record.

symptoms." *Holt v. Sullivan*, 921 F. 2d 1221, 1223 (11th Cir. 1991). This standard requires "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain." *Id.*[10] Pain in itself can be disabling; however, mere statements by a claimant about his or her pain and symptoms, without more, are not sufficient to establish a disability. *Foote*, 67 F.3d at 1561; 20 C.F.R. § 404.1529(a); 20 C.F.R. § 416.929(a ). Once an impairment is established, "all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability." *Id*. As discussed within, Mr. Watkins has sufficiently established the requirements to prove parts one and three of the pain standard.

### A. Mr. Watkins has met part one of the pain standard.

The ALJ "acknowledges there is evidence of degenerative disc disease in the record" and that Mr. Watkins's "medically determinable impairments could

---

[10] The second prong of the Eleventh Circuit pain standard had two disjunctive parts and, as a result, the entire framework for pain evaluation has sometimes been referred to as the three-part pain standard. *See, e.g., Elam v. Railroad Ret. Bd.*, 921 F. 2d 1210, 1215 (11th Cir. 1991) ("Our decisions since *Hand* and *Landry* have consistently applied this three-part pain standard.") (footnotes omitted). For the purposes of this memorandum opinion, this court uses the three-part labeling described in *Holt* and *Elam*.

reasonably be expected to cause the alleged symptoms." (Tr. 16). This objective evidence includes Mr. Watkins's MRI report (Tr. 309-10), x-ray report (Tr. 233), his consulting physician, Dr. Ledet's, notes and records (Tr. 278-83) and all accounts from his check-ups with his treating physician, Dr. Balasky (Tr. 220-28, 285-86, 312-14).[11] Dr. Balasky, through review of Mr. Watkins's MRI and x-ray, concluded that Mr. Watkins has:

1.      Significant grade 1 spondylolisthesis due to bilateral pars defects at L5-S1, causing significant right greater than left L5 neural foraminal narrowing and probable nerve root impingement.

2.      Moderately advanced left L5-S1 facet degeneration.

3.      Early degenerative bilateral neural foraminal narrowing at L4-L5, without evidence of impingement.

(Tr. 233, 309-10).[12] Furthermore, the ALJ confirms that Mr. Watkins has "degenerative disc disease of the lumbar spine, [an] impairment[] that [is] 'severe' within the meaning of the Regulations . . . ." (Tr. 13). Thus, Mr. Watkins has shown that he has an objective medical condition of degenerative disc disease, and he has sufficiently satisfied the first prong of the pain standard.

---

[11]  The cover letters associated with these records all indicate that Dr. Balasky and/or the Guin Medical Clinic is the treating source for Mr. Watkins. (Tr. 219, 284, 311).

[12]  Mr. Watkins and his attorney admitted during the hearing with the ALJ that there is no objective medical evidence in the record, x-ray or otherwise, to support his claims of a broken right foot and that Mr. Watkins has not received any treatment for it. (Tr. 54).

**B.** **The ALJ has not adequately discredited Mr. Watkins's subjective pain and other disabling symptoms associated with his degenerative disc disease under part three of the pain standard.**

In part three of the pain standard analysis, the ALJ determined that even though Mr. Watkins presented sufficient evidence to prove that he had degenerative disc disease, "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Tr. 16); (*see also id.* (acknowledging evidence of degenerative disc disease, but concluding that "the medical evidence of record does not substantiate the alleged resulting limitation severity")). If a claimant has supported his testimony with objective medical evidence, as Mr. Watkins has done in this case, the ALJ is required to articulate "explicit and adequate reasons" if he is to properly discredit that testimony. *Wilson*, 284 F.3d at 1225 (citing *Hale v. Bowen*, 831 F. 2d 1007, 1011 (11th Cir. 1987)). An ALJ can use his own objective evidence, supported by other relevant factors, such as the "claimant's daily activities; [and] the location, duration, frequency, and intensity of the claimant's pain," to discredit the claimant's pain testimony. *Rudder v. Berryhill*, No. 4:16-CV-0717-VEH, 2017 WL 2289128, at *11 (N.D. Ala. May 25, 2017) (citing 20 C.F.R. § 404.1529(c)(3)). The Eleventh Circuit has regularly followed the rationale presented in *Foote,* when the reviewing court criticized the ALJ for "fail[ing] to identify any inconsistencies between [the plaintiff's] statements

to her physicians and those she ha[d] made to the Secretary, through her application

for disability benefits and during her administrative hearing," and concluded that the

ALJ failed to apply the Eleventh Circuit pain standard to the facts of the claimant's

case. *Foote*, 67 F. 3d at 1562; *see also Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th

Cir. 1983) ("[W]here proof of a disability is based upon subjective evidence and a

credibility determination is, therefore, a critical factor in the Secretary's decision, the

ALJ must either explicitly discredit such testimony or the implication must be so clear

as to amount to a specific credibility finding."); *Walden*, 672 F.2d at 839 (explicit

credibility "findings are necessary and crucial where subjective pain is an issue"). The

court finds that although the ALJ did articulate explicitly why he chose to discredit

Mr. Watkins's pain testimony attributable to his degenerative disc disease, his reasons

for doing so are inadequate as explained below.

> i. **The ALJ's reliance upon Mr. Watkins's ability to conduct simple daily activities is not an adequate reason to discount his pain.**

The ALJ attempted to discredit Mr. Watkins's alleged pain by using his daily

activities and ability to perform simple tasks to conclude that his statements about the

persistency and intensity of his pain could not be completely accurate. (Tr. 20). More

specifically, the ALJ pointed to Mr. Watkins's statements about his ability to

occasionally take out the trash, cook some meals for himself (Tr. 37), go to the store,[13] go to church,[14] mop, and perform other similar tasks around the house. (Tr. 40). Even though a claimant's daily activities are to be considered when making a determination of credibility (20 C.F.R. § 404.1529), participation in everyday activities of "short duration, such as housework" does not, by itself, disqualify a claimant from receiving disability benefits. *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997). When considering daily activities, the entire record must be taken into account, including the claimant's statements that he must lie down after a few hours of work. *Parker v. Bowen,* 793 F.2d 1177, 1180 (11th Cir. 1986).

In *Venette v. Apfel*, 14 F. Supp. 2d 1307, 1314 (S.D. Fla. 1998), the district court held that housework, light cooking, and light grocery shopping are minimal daily activities and "are not dispositive evidence of one's ability to perform sedentary work in a Social Security case."[15] *Id.* at 1314; *see also Flynn v. Heckler*, 768 F.2d

---

[13]  Mr. Watkins claims that he can walk about half the grocery story (about 150 yards) until he has to leave to rest. (Tr. 38).

[14]  Mr. Watkins claims that he only stays for the singing and the prayer before he has to leave (about one hour). He states that "I get up and down and visit with people." (Tr. 40).

[15]  Sedentary work is defined as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. § 404.1567(a). Sedentary work requires *less exertion* than jobs classified as light work, which the ALJ held Mr. Watkins was able to perform. (Tr. 15).

1273, 1275 (11th Cir. 1985) (Though the claimant was able to "attend church, and drive an automobile short distances," as well as perform "housework for herself and her husband, and accomplish[] other light duties in the home," she was still found to be disabled); *Walker v. Bowen*, 826 F.2d 996, 1003, 1004 (11th Cir. 1987) (rejecting ALJ's pain standard analysis despite reasoning indicating that "the medical reports <u>and Walker's daily activities</u> do[] not establish that she suffers from an impairment which could produce disabling pain") (emphasis added).

Additionally, judges sitting in the Northern District of Alabama (including the undersigned) have held that a claimant's ability to perform limited daily activities, such as light household chores, going to church, cooking, watching television and shopping with assistance is inadequate to substantially support an ALJ's adverse credibility determination. *See Rutledge v. Barnhart*, 391 F. Supp. 2d 1057, 1602 (N.D. Ala. 2005) ("Evidence of minor personal activities do not alone provide substantial evidence of [a] functional capacity necessary to engage in substantial gainful activity nor does it discredit a claimant's testimony regarding pain."); *see also Frizzell v. Astrue*, 487 F. Supp. 2d 1301, 1305-06 (N.D. Ala. 2007); (determining that "fix[ing] breakfast, dress[ing] . . . , watch[ing] television . . . cook[ing] meals . . . [,] shop[ping], . . . perform[ing] light cleaning, dusting and clothes washing . . ." "do not rule out the presence of disabling pain"); *Pollard v. Astrue*, 867 F. Supp. 2d 1225,

1232 (N.D. Ala. 2012) (finding that ALJ's credibility analysis was flawed because it gave great weight to daily activities, such as cooking and caring for personal hygiene, that did "not support a finding that the plaintiff's pain testimony is not true" and, therefore, failed to "rule out the presence of disabling pain"); *Bennett v. Barnhart*, 288 F. Supp. 2d 1246, 1252 (N.D. Ala. 2003) ("What counts is the ability to perform as required on a daily basis in the 'sometimes competitive and stressful' environment of the working world." (quoting *Douglas v. Bowen*, 836 F.2d 392, 396 (8th Cir. 1987)); *Bennett*, 288 F. Supp. 2d at 1252 ("[A]n applicant need not be completely bedridden or unable to perform any household chores to be considered disabled." (quoting *Easter v. Bowen*, 867 F.2d 1128, 1130 (8th Cir. 1989) (citing *Yawitz v. Weinberger*, 498 F.2d 956, 960 (8th Cir. 1974))).

Alternatively, to the extent that Mr. Watkins's daily activities, because of his ability to drive a car, partially support the ALJ's credibility determination, such evidence cannot ever be the *only* basis for discrediting pain. *Lewis*, 125 F.3d at 1441. As long as Mr. Watkins's statements and actions are consistent regarding the intensity, persistence and limiting effects of the alleged pain caused by his degenerative disc disease, he can still be found to be disabled, despite his ability to drive a car short distances and partially care for himself. *Id*. Here, none of the ALJ's other reasons are adequate, as explained *infra,* to discredit Mr. Watkins's pain.

Therefore, the ALJ's reliance upon Mr. Watkins's daily activities including his ability to drive a car is insufficient to sustain the ALJ's adverse credibility finding.

### ii. The ALJ incorrectly asserted that Mr. Watkins did not adhere to his required pain treatment schedule.

The ALJ inadequately discredited Mr. Watkins's pain by incorrectly concluding that he did not adhere to the appropriate treatment schedule advised by Dr. Balasky. (Tr. at 18-19). The ALJ stated that Mr. Watkins "only presented every four months for medication refills." *Id*. After careful inspection of the record, there is evidence that Mr. Watkins visited Dr. Balasky for check-ups in two month intervals (approximately), just as Dr. Balasky had instructed him to do.[16] During each check-up, Mr. Watkins's physical impairments were assessed and any changes in his condition were noted. *Id*. Also included in each of his check-up reports were his Xanex, Norco and/or Lortab 10 prescription refills. *Id.* The record shows that this occurred regularly from April 2011 to September 2014. *Id.* Therefore, the ALJ's statement that Mr. Watkins's failed to follow his required treatment schedule is incorrect and, thus, inadequate to discount his pain.

---

[16] Doctor Balasky's check-up reports from the Guin Medical Clinic dated 04/05/2011 to 02/11/2013 (Tr. 220-28), dated 05/09/2013 to 11/07/2013 (Tr. 285-86) and dated 01/06/2014 to 09/03/2014 (Tr. 312-14).

### iii. Dr. Ledet's opinions alone are inadequate to discredit Mr. Watkins's credibility.

Regarding statements concerning the intensity and persistence of pain, the ALJ may not reject a claimant's testimony "solely because the available objective medical evidence does not substantiate [the claimant's] statements." 20 C.F.R. § 404.1529(c)(2). Furthermore, an ALJ cannot discredit a claimant's subjective allegations of pain entirely on the basis of a consulting physician's opinion that the claimant has no physical limitations. *Id*. As long as the claimant has not been inconsistent with his statements or actions, his allegations of pain must be accepted as true pursuant to the Eleventh Circuit pain standard. *Holt*, 921 F. 2d at 1223; *see generally Foote*, 67 F. 3d at 1562 (describing broad principles applicable to credibility determinations).

The ALJ in this case relied heavily on consulting physician Dr. Ledet's observations and opinions (Tr. 278-83) in forming his decision to partially discount Mr. Watkins's credibility and deny him benefits. (Tr. 16-17). After a single examination of Mr. Watkins, Dr. Ledet concluded that he had no physical limitations. (*See* Tr. 16-17 (summarizing Dr. Ledet's objective observations from his examination of Mr. Watkins, including his conclusion that Mr. Watkins had no physical limitations)). Dr. Ledet's records concerning his examination of Mr. Watkins do not

reflect that Mr. Watkins made any statements about the intensity or persistence of his pain and other disabling symptoms. (Tr. 278-83). Therefore, Dr. Ledet's opinion that Mr. Watkins had no physical limitations appears to be based solely upon objective observations made during the consultative visit. Further, because a lack of objective evidence is an inadequate reason to discredit a claimant's subjective allegations of pain, the court is persuaded that a medical opinion based solely upon the results of objective testing is likewise inadequate to discredit a claimant, especially in the absence of any authority cited by the Commissioner in which a court has held otherwise.[17] Therefore, this court concludes that the ALJ's reliance upon Dr. Ledet's objective observations and his medical opinion of no physical limitations based upon those observations is inadequate for the purpose of discrediting Mr. Watkins's pain testimony. *Cf. Walker*, 826 F.2d at 1004 ("Rather, in a conclusory manner, [the ALJ] simply found that neither the medical evidence nor Walker's testimony established the existence of such pain.").

### iv. Mr. Watkins's lack of previous employment is not an adequate reason to discredit his pain.

The ALJ attempts to discredit Mr. Watkins's pain through his work history

---

[17]  To be clear, none of the cases referenced by the Commissioner indicate that an ALJ's reliance upon a consultative opinion is an adequate reason to discount a claimant's pain testimony. Additionally, the court's independent research has revealed no such authority.

predating his disability. (Tr. 19). The ALJ commented that Mr. Watkins's lack of stable employment since 1997[18] did not "suggest a strong motivation for regular employment" and implied that the reason he has been unemployed is not solely because of his alleged impairments. *Id*. The ALJ continued that, since Mr. Watkins was not "motivated" to find a job, his RFC determination was further validated. *Id*. The Commissioner has not cited to any case authority that an ALJ's reliance upon an unstable work history is an adequate reason to discredit a claimant's pain. Additionally, this court's independent research has revealed no binding decision holding that a claimant's (suggested) lack of enthusiasm for securing a job is an appropriate reason for discounting a claimant's credibility. Consequently, the court is not persuaded to find that evidence of a sporadic work history constitutes good cause to discredit a claimant's subjective allegations of pain.

The court acknowledges several cases that the Commissioner has cited to in support of the ALJ's decision. However, most of the decisions relied upon by the Commissioner are non-binding on this court and, regardless, are factually dissimilar. Importantly, the persuasive authorities cited by the Commissioner involve either "totally groundless" claims such as *Higgs v. Bowen*, 880 F. 2d 860, 863 (6th Cir. 1988) or have been addressed elsewhere in this opinion.

---

[18] As amended, Mr. Watkins alleged disability beginning February 12, 2013. (Tr. 167).

As for the binding decisions cited by the Commissioner, those cases are cited primarily for general propositions applicable in all social security cases and the Commissioner's reliance upon them does not impact the court's pain standard analysis under the circumstances of this appeal. For example, in reviewing *Moore v. Barnhart*, this court agrees that "the mere existence of these impairments does not reveal the extent to which they limit her ability to work;" however, unlike in this case, Moore's claims for disability rested "solely on the fact that she ha[d] varus leg instability and shoulder separation" with no additional evidence of any limiting effects or pain. (emphasis removed) (doc. 12 at 8) (quoting *Moore*, 405 F. 3d 1208, 1213 n.6 (11th Cir. 2005)). Likewise, the Commissioner's reliance upon *McCruter v. Bowen* to determine if an impairment is severe or not is cumulative because the ALJ in this case continued to analyze Mr. Watkins's degenerative disc disease as if it were classified as a severe impairment.[19] 791 F. 2d 1544, 1547 (11th Cir. 1986); (Tr. 13).

Additionally, the Commissioner misinterpreted *Wolfe v. Chater*, 86 F. 3d 1072, 1078 (11th Cir. 1996) when applying it to this case. (Doc. 12 at 11). The ALJ in *Wolfe* did consider the fact that the claimant was only recommended to receive

---

[19] This court already explained, *supra*, why the ALJ's failure to classify Mr. Watkins's degenerative disc disease as severe at the beginning of the disability analysis was a harmless error.

conservative treatment, and nothing more, from his physician when he discredited Wolfe's pain testimony. *Id*. However, unlike in this case, the determination was in accordance with other factors, including Mr. Wolfe's ability to lift rocks and wash mobile homes. *Id*. Finally, although the Commissioner's description of *Foote* is correct in stating that a "clearly articulated credibility finding *with substantial supporting evidence . . .* will not be disturbed," that substantial evidence standard has not been met based on the specific circumstances of this case. (emphasis added) (Doc. 12 at 14) (quoting *Foote*, 67 F. 3d at 1562).

## CONCLUSION

The court has found that the ALJ incorrectly applied the Eleventh Circuit pain standard in determining if the alleged pain can reasonably be a result of the impairment by failing to appropriately credit Mr. Watkins's subjective testimony. For those reasons, this court has found that the Commissioner's decision is not supported by substantial evidence and the ALJ did not apply the proper legal standard. This case is **REVERSED** and **REMANDED** to the Social Security Administration. A separate order will issue.

**DONE** and **ORDERED** this 29th day of June, 2017.

**VIRGINIA EMERSON HOPKINS**
United States District Judge